**Kenneth R. LEWIS, Plaintiff,**

v.

**NEWS–PRESS & GAZETTE CO., d/b/a The St. Joseph News Press/Gazette, et al., Defendants.**

**No. 91–6037–CV–SJ–8.**

United States District Court, W.D. Missouri, St. Joseph Division.

Jan. 7, 1992.

---

**3.** A few of the claims covered by the securities statute of limitations are actions arising from a broker-dealer's failure to register, Mo.Rev.Stat. § 409.201(a), from the sale of unregistered securities, Mo.Rev.Stat. § 409.301, and from not complying with filing requirements pertaining to sales literature intended for distribution to prospective investors, Mo.Rev.Stat. § 409.403. Mo.Rev.Stat. § 409.411(a)(1).

Timothy W. Monsees, Kansas City, Mo., for Kenneth R. Lewis.

Wendell E. Koerner, Jr., St. Joseph, Mo., for News–Press & Gazette Co. d/b/a The St. Joseph News Press/Gazette, David R. Bradley, Jr. and Michael McCann.

Scott Templeton, Kirksville, Mo., for Roy Hicklin, Bill Hoyt and John and Ruth Ann Hutcherson.

Michael S. Shipley, Liberty, Mo., for Gerald H. and Helen A. DeWitt and Bud and Virginia Howsman.

## ORDER

STEVENS, District Judge.

Plaintiff brought a four-count complaint against multiple defendants, alleging violations of 42 U.S.C. §§ 1983 and 1985(1), and state commonlaw claims of defamation and conspiracy to commit defamation. The case is now before the court on motion of defendants News–Press & Gazette Co. ("News–Press"), David R. Bradley, Jr. ("Bradley"), and Michael McCann ("McCann") to dismiss, and the motion of defendants Orville and Virginia Howsman ("the Howsmans") and Gerald and Helen DeWitt ("the DeWitts") to dismiss and for summary judgment.

### I. Factual Summary

The court will not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). In ruling on a motion to dismiss, the court shall "take the allegations of the complaint at face value," *California Motor Transport Co. v. Trucking Unltd.*, 404 U.S. 508, 515, 92 S.Ct. 609, 614, 30 L.Ed.2d 642 (1972), and construe all "allegations of the complaint favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Accordingly, the court recognizes the following facts as plead in plaintiff's complaint.

Plaintiff is an acting Circuit Judge for the 43rd Judicial Circuit of the State of Missouri. Sometime after plaintiff convened a grand jury in December, 1989, defendant News–Press sought to obtain from plaintiff the identities of the grand jury members. Plaintiff denied News–Press' request to release the information, in order to prevent interference with the grand jury members through threat of injury or intimidation. Defendant News–Press thereafter repeatedly sought without success to obtain the names of the grand jury members.

News–Press subsequently requested, through the Missouri state representative for Buchanan County, an opinion on the matter from William Webster, the Missouri Attorney General. Webster reached a decision on March 19, 1990, determining that plaintiff had no legal duty to divulge the names of the grand jury members. In spite of this ruling, News–Press "criticized and harassed plaintiff in open press and print on repeated occasions for his decision to keep confidential the identities of the grand jurors." Plaintiff's First Amended Complaint, p. 6.

Plaintiff and his wife own a tract of land [1] situated in Livingston County, Missouri. Plaintiff and adjoining landowners have maintained gates across a particular road on plaintiff's property and the adjoining property since approximately 1973. The gates were erected to prevent trespassing across the properties.

Plaintiff alleges that as a result of defendants' antagonism and animosity toward plaintiff, News–Press conspired with the other defendants to harass, obstruct and humiliate plaintiff so as to impair his performance and standing as a judge; he also alleges that the defendants conspired to deprive him of his liberty interest and the use and enjoyment of his real property without due process of law.

In furtherance of this conspiracy, defendants circulated and published on or before December 1, 1990, oral and written statements to the effect that plaintiff erected barriers on a public roadway and is thus obstructing public access to the road. These statements in effect represented that plaintiff has committed a criminal offense of obstructing a public roadway in violation of R.S.Mo. § 229.150. Plaintiff alleges that defendants either knew the statements were false or failed to conduct a sufficient investigation to determine their accuracy.

---

**1.** The land is described on page 7 of plaintiff's First Amended Complaint as "All of the south half (S½) of the northwest quarter (NW¼) and all of the north half (N½) of the southwest quarter (SW¼), all in section twenty nine (29), township fifty-seven (57), range twenty-two (22)."

Said statements were printed by defendant News–Press, in its December 9, 1990 newspaper, in an article written by defendant McCann. The named defendants repeatedly published these statements, including representations made by defendants Hoyt and Hicklin in their positions as commissioners on the Livingston County Commission, and by defendant Hutcherson as a member of the Grand River Township Board.

In addition, the Howsmans and DeWitts admit in their Suggestions in Support of the Motion to Dismiss that defendants Bud Howsman and Gerald DeWitt petitioned the Grand River Township Board to open the road in question, and that defendants Virginia Howsman and Helen DeWitt signed the petition along with other citizens. Apparently there is a disagreement between the Livingston County Commission and the Grand River Township Board over which body has jurisdiction over the dispute.

Plaintiff alleges four claims in his First Amended Complaint: conspiracy to prevent plaintiff from performing the judicial duties of his "office, trust, or place of confidence under the United States," in violation of 42 U.S.C. § 1985(1) (Count I); defamation (Count II); deprivation of his federal constitutional rights, under color of law, in violation of 42 U.S.C. § 1983 (Count III); and conspiracy to commit defamation (Count IV).

*II. Motion to Dismiss by defendants News–Press, Bradley and McCann*

■ Defendants News–Press, Bradley and McCann ("movants" for purposes of section II) move to dismiss Count I for failure to state a claim upon which relief can be granted.[2] They argue that 42 U.S.C. § 1985(1) applies only to federal officials and that plaintiff, as a state judge, has no standing to raise a claim under the statute. For the reasons stated herein, movants' motion will be denied.

42 U.S.C. § 1985(1) states:

If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding *any office, trust, or place of confidence under the United States,* or from discharging any duties thereof ... (3) the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

*Id.* (emphasis added). Plaintiff argues that he holds, as a state judge, an "office, trust, or place of confidence under the United States" and that he therefore has standing to raise a claim under § 1985(1).

The United States Supreme Court has stated that § 1985 is to be accorded "a sweep as broad as its language." *Griffin v. Breckenridge,* 403 U.S. 88, 97, 91 S.Ct. 1790, 1796, 29 L.Ed.2d 338 (1971). Likewise, the courts of appeal have recognized that § 1985(1) is a "statute cast in general language of broad applicability and unlimited duration." *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329, 1335 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). *See also Windsor v. The Tennessean,* [3] 719 F.2d 155, 161 (6th Cir.1983) (interpreting § 1985(1) broadly), *cert. denied,* 469 U.S. 826, 105 S.Ct. 105, 83 L.Ed.2d 50 (1984).

As a state judge, plaintiff holds a unique position of mixed state and federal authority and responsibility. First, plaintiff is em-

---

**2.** Movants also seek dismissal of "Counts II and III" for lack of subject matter jurisdiction. They argue that, should Count I be dismissed, the court would have no jurisdiction over plaintiff's state common law claims of defamation and conspiracy to commit defamation.

While movants' motion was filed July 9, 1991, movants apparently overlooked Plaintiff's First Amended Complaint, filed June 24, 1991. Plaintiff included a § 1983 claim as Count III in its First Amended Complaint. Thus, even if the court dismissed Count I, it would still have federal question jurisdiction over Count III, and pendent jurisdiction over Counts II and IV. Accordingly, the motion to dismiss "Counts II and III" (in actuality Counts II and IV) must be dismissed outright.

**3.** In *Windsor,* the Seventh Circuit held that "a conspiracy to harm a federal official's reputation on account of his lawful discharge of his duties ... is actionable under 42 U.S.C. § 1985(1)." 719 F.2d at 161.

powered with the responsibility of deciding issues of federal constitutional dimension on a regular basis. Second, the United States Constitution explicitly recognizes the trust and confidence placed in state judges in exercising that responsibility, providing that state judges are bound by the United States Constitution, *see* U.S. Const. art. VI, cl. 2, and requiring that state judges take an "Oath or Affirmation, to support this Constitution." [4] U.S. Const. art. VI, cl. 3. Third, in deciding federal constitutional questions, plaintiff is bound by the decisions of the United States Supreme Court. Finally, the specific dispute at issue in this case evolved out of plaintiff's decision on a federal constitutional question, that is, whether defendant News–Press had a first amendment right to the names of the grand jurors.

Each of these factors underscore the "trust" and "confidence" placed in a state judge to decide federal constitutional issues and the uniquely quasi-federal role that a state judge plays in doing so. The court thus finds that plaintiff holds, for purposes of this case, an "office, trust, or place of confidence under the United States," and accordingly has standing to raise his claim under § 1985(1).

The court recognizes, after a search for case law on the subject, that this is perhaps the first case to find that a non-federal official has standing to sue under § 1985(1).[5] While the court has found numerous cases that denied the standing of a non-federal official under § 1985(1), those cases are clearly distinguishable from the present case. In each of those cases the plaintiff's official duties involved neither federal authority nor federal responsibility, and thus the individual clearly did not hold "an office, trust, or place of confidence under the United States." *See, e.g., Morast v. Lance,* 807 F.2d 926, 929 (11th Cir. 1987) (officer of federally regulated national bank lacked standing); *Canlis v. San Joaquin Sheriff's Posse Comitatus,* 641 F.2d 711, 718 (9th Cir.) (officers of county sheriff's department lacked standing), *cert. denied,* 454 U.S. 967, 102 S.Ct. 510, 70 L.Ed.2d 383 (1981); *Town of Brookline v. Operation Rescue,* 762 F.Supp. 1521, 1523 (D.Mass.1991) (city officials and police officers); *Baron v. Carson,* 410 F.Supp. 299, 300 (N.D.Ill.1976) (county health board member).

The court agrees that "[i]n general terms, [§ 1985(1)] proscribe[s] conspiracies that interfere with the performance of official duties by federal officers." *Kush v. Rutledge,* 460 U.S. 719, 724, 103 S.Ct. 1483, 1486, 75 L.Ed.2d 413 (1983); *Harrison v. Springdale Water & Sewer Commission,* 780 F.2d 1422, 1429 (8th Cir.1986). The case at bar, however, presents a unique fact situation that does not fit within the confines of that general proscription. Plaintiff, unlike any other state official that this court can think of, holds a uniquely quasi-federal position for purposes of

---

**4.** In *Brewer v. Hoxie School Dist. No. 46 of Lawrence County, Ark.,* 238 F.2d 91 (8th Cir. 1956), the directors and superintendent of an Arkansas school district sought a declaratory judgment and an injunction against interference with the district operating its schools on a desegregated basis. The issue before the Eighth Circuit was whether the federal district court had subject matter jurisdiction over the dispute. The court noted that plaintiffs were under a state oath of office and a "constitutionally imposed duty," after *Brown v. Board of Education,* to support the Fourteenth Amendment to the United States Constitution. *Id.* at 98. In ruling that the district court had jurisdiction, the court stated:

> Plaintiffs are under a duty to obey the Constitution. Const. Art. VI, cl. 2. They are bound by oath or affirmation to support it and are mindful of their obligation. It follows as a

necessary corollary that they have a *federal right to be free from direct and deliberate interference with the performance of the constitutionally imposed duty.*

*Id.* at 99 (emphasis added).

While plaintiff sought relief in *Brewer* under § 1985(2) and the language quoted above was discussed in the context of a dispute over federal court jurisdiction and not plaintiffs' standing, the court's recognition of a correlative federal right that is attendant on the constitutional duties of certain state actors is instructive. *See id.* at 100.

**5.** Conversely, federal officials of whatever form invariably have standing to sue under § 1985(1) in order to remedy interference in the lawful discharge of their duties. *See, e.g., Windsor,* 719 F.2d at 161 (suit by assistant United States Attorney); *Stern,* 547 F.2d at 1335 (suit by Internal Revenue Service agent).

this case, not just because of his federal constitutional authority and responsibility, but rather because this entire case has evolved out of plaintiff's discharging his duties by ruling on a federal constitutional question. It is the interference with such a discharge of federal duties that § 1985(1) was explicitly designed to protect against. Therefore, while the court is convinced that this particular plaintiff occupies for purposes of this case an "office, trust, or place of confidence under the United States," its ruling is confined strictly to the facts of this case and should not be interpreted to open the floodgates to § 1985(1) claims by non-federal officials.

### III. Motion to Dismiss and for Summary Judgment by Defendants Orville and Virginia Howsman and Gerald and Helen DeWitt

The Howsmans and DeWitts ("movants" for purposes of section III) move first to dismiss Count I of plaintiff's First Amended Complaint on the ground that plaintiff lacks standing under § 1985(1). For the reasons stated in section II above, this part of the motion will be denied.

Movants also seek to have Count III dismissed for failure to state a claim. Movants have submitted affidavits and other matters outside the pleadings to the court, and on their request the motion is hereby converted, pursuant to Fed.R.Civ.P. 12(b)(6), into a motion for summary judgment. *See Layton v. United States*, 919 F.2d 1333, 1334 (8th Cir.1990).

### A. Standard For Summary Judgment

In reviewing defendant's motion for summary judgment, the court must consider whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, the court notes that summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 1).

There is no genuine issue for trial unless the nonmoving party shows, through the record presented to the court, that it is able to prove the existence of evidence sufficient for a jury to return a verdict in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). If the nonmoving party establishes the existence of evidence which is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2510–11 (citations omitted). Any inferences to be drawn from the facts, however, must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Once the moving party has carried its burden under Rule 56(c), the nonmoving party must do more than "rest upon the mere allegations or denials" in its pleadings, Fed.R.Civ.P. 56(e), or "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. Rather, the nonmoving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R.Civ.P. 56(e)).

### B. Plaintiff's Claim Under 42 U.S.C. § 1983

42 U.S.C. § 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The statute thus plainly requires plaintiff to prove that defendants acted "under color of" state law, and deprived him of a right secured by the Constitution or laws of the United States. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

Movants make three primary arguments in support of their motion for summary judgment on plaintiff's claim. First, movants argue that they took no action under color of state law. Second, they argue that plaintiff has adequate remedies under state law. Finally, they argue that plaintiff has not been deprived of a constitutional or federal statutory right and that his claim must thus fail. The court rejects movants' second argument and finds that there are material issues of fact as to their first and third arguments. Accordingly, the motion will be denied.

### 1. *Under Color of State Law*

■ Movants argue that, since they are not state officials, they cannot have acted under color of state law. It is well settled, however, that a private party acts under color of state law, for purposes of § 1983, when he or she conspires with a state actor to deprive someone of their rights. *Adickes*, 398 U.S. at 152, 90 S.Ct. at 1605. The Supreme Court stated in Adickes:

> The involvement of a state official in such a conspiracy plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights.... Moreover, a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983. "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents."

*Id.* (quoting *United States v. Price*, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966)). *See also Brummett v. Camble*, 946 F.2d 1178, 1185 (5th Cir.1991) ("Such a conspiracy theory is sufficient to establish that the private defendants acted under color of law within the meaning of § 1983.").

■ Plaintiff alleges in Count III that defendants Roy Hicklin and Bill Hoyt, both Commissioners on the Livingston County Commission, and defendant John Hutcherson, a member of the Grand River Township Board, conspired with each other and with the other named defendants to deprive plaintiff of his civil rights. Since movants are alleged to have acted in concert with these state actors, their actions are cloaked under color of state law.

Movants also argue that plaintiff has plead a § 1983 conspiracy with insufficient specificity and that the claim should therefore be dismissed. In discussing the specificity required to sustain a § 1983 conspiracy claim, the Eighth Circuit has stated:

> The factual basis need not be extensive, but it must be enough to avoid a finding that the suit is frivolous. *See McClain v. Kitchen*, 659 F.2d 870, 872 (8th Cir. 1981) (dismissal appropriate where complaint alleges absolutely no facts to support conspiracy claim). Appellants must at least allege that "the defendants had directed themselves toward an unconstitutional action by virtue of a mutual understanding," and provide some facts "suggesting such a meeting of the minds."

*Smith v. Bacon*, 699 F.2d 434, 436–37 (8th Cir.1983) (quoting *White v. Walsh*, 649 F.2d 560, 561 (8th Cir.1981)). *See also Manis v. Sterling*, 862 F.2d 679, 681 (8th Cir.1988).

In *White v. Walsh* the Eighth Circuit also recognized, however, that while a conspiracy claim

> must be sufficiently specific, that standard was not intended to be an insurmountable barrier.... We are mindful that "conspiracies are by their nature usually clandestine. It is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement. Thus, such evidence is not necessary to prove that a civil conspiracy existed." Accordingly, depend-

ing upon the conspiracy alleged in any particular case, the complainant may or may not be in a position to allege with precision the specific facts giving rise to the claim.

649 F.2d at 561 (citation omitted) (plaintiff's claim that appointed defender conspired with judge and prosecutor to conceal unlawful arrest and obtain a criminal conviction was plead with sufficient specificity). *See also Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir.1979) ("Absent the testimony of a coconspirator, it is unlikely that direct evidence of a conspiratorial agreement will exist.").

Plaintiff alleges in the present case that defendants conspiratorially sought to deprive plaintiff of his property and liberty interests without due process of law and therefore violated his rights under the fourteenth amendment. In furtherance thereof, he alleges that defendants circulated and published oral and written statements representing that plaintiff had committed a misdemeanor crime by violation of R.S.Mo. § 229.150. In addition, plaintiff alleges that defendants published these same representations in the December 9, 1990 edition of the St. Joseph News–Press/Gazette. Finally, plaintiff alleges that said representations were repeatedly made to the general public, including statements made by defendants Hoyt, Hicklin and Hutcherson in their official capacities as members of the Livingston County Commission and the Grand River Township Board.

■ The court finds that these alleged facts are sufficiently specific for purposes of pleading a § 1983 conspiracy. Plaintiff need not prove the merits of his § 1983 claim in order to prevail on defendants' motion for summary judgment. Rather, he must merely "set forth sufficient facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In addition, all factual inferences are interpreted at this stage in the light most favorable to plaintiff. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. Since the court finds that plaintiff has set forth sufficient facts in support of his claim and has established the existence of a material issue of fact, the ultimate question of whether a conspiracy did or did not exist on the part of defendants is better left for trial. *See Hampton*, 600 F.2d at 621 ("When a plaintiff alleges a conspiracy to violate civil rights, '[t]he existence or nonexistence of a conspiracy is essentially a factual issue that the jury, not the trial judge, should decide.' "). *See also Thomas v. Harris County*, 784 F.2d 648, 652–53 (5th Cir.1986); *Dykes v. Hosemann*, 743 F.2d 1488, 1498 (11th Cir.1984).

### 2. Adequate Remedy at State Law

■ Movants also argue that Count III should be dismissed because plaintiff has adequate remedies at state law. Specifically, movants argue that plaintiff's claims should be remedied by state law actions for inverse condemnation or ejectment. Movants fail to cite any authority, however, for the proposition that an adequate state remedy precludes a § 1983 claim. In fact, the Supreme Court has "long held that an action under § 1983" does not require plaintiff to exhaust any state judicial or administrative remedies. *Ellis v. Dyson*, 421 U.S. 426, 432–33, 95 S.Ct. 1691, 1694–95, 44 L.Ed.2d 274 (1975). *See also Lynk v. La-Porte Superior Court No. 2*, 789 F.2d 554, 559 (7th Cir.1986).

In addition, "[t]he availability of postdeprivation remedies is not a defense to the denial of procedural due process where predeprivation process is practicable." *Westborough Mall, Inc. v. City of Cape Girardeau, Mo.*, 794 F.2d 330, 337 (8th Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 688 (1987). The Eighth Circuit has stated that a predeprivation hearing is required "unless the action is random and unauthorized or the state cannot possibly provide a predeprivation hearing" or there are exigent circumstances which excuse a hearing. *Littlefield v. City of Afton*, 785 F.2d 596, 600 (8th Cir.1986). Since none of these circumstances apply in the present case, predeprivation process was clearly practicable.

Thus, the availability of state law remedies neither precludes plaintiff from seeking relief under § 1983 nor serves as a

defense for defendants' denial of due process.

### 3. Deprivation of Constitutional or Federal Statutory Right

■ Movants also argue that Count III should be dismissed because plaintiff has not been deprived of a constitutional or federal statutory right as § 1983 requires. In *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) the Supreme Court ruled that defamation, by itself, is insufficient to support a claim under § 1983 unless there is a corresponding deprivation of another "more tangible interest." The Court attempted to define that necessary interest by stating:

> It is apparent from our decisions that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status.

*Id.* at 710–11, 96 S.Ct. at 1165.

The plaintiff in *Paul* brought a § 1983 claim against two police chiefs who distributed a flyer among area merchants that included plaintiff's picture and labeled plaintiff as an "Active Shoplifter." *Id.* at 694–95, 96 S.Ct. at 1157–58. Plaintiff claimed that the flyer prevented him from entering business establishments for fear of being apprehended and would impair his future employment opportunities. *Id.* at 697, 96 S.Ct. at 1158. The Court found that these interests were insufficient to constitute a status, previously recognized under state law, which had now been altered or extinguished. *Id.* at 711, 96 S.Ct. at 1165. The Court thus held that plaintiff was not deprived of a liberty or property interest without due process of law.

The Supreme Court has reached the opposite result, however, in cases where the plaintiff has alleged the deprivation of a different interest. *See Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (charge of student misconduct and subsequent suspension may be actionable under § 1983 where it deprives student of state right to attend school); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (defamation in the course of termination from employment may be actionable) (*noted in Paul*, 424 U.S. at 710, 96 S.Ct. at 1165); *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (practice of "posting" the names of excessive drinkers and forbidding the sale of liquor to anyone so posted deprived plaintiff of right to purchase alcohol). *See also Owen v. City of Independence, Mo.*, 589 F.2d 335, 337 (8th Cir.1978) (derogatory statements made in connection with the discharge of plaintiff stated a claim under § 1983), *rev'd on other grounds*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Click v. Board of Police Commissioners*, 609 F.Supp. 1199, 1205 (W.D.Mo.1985) (Bartlett, J.) (police officer deprived of constitutionally protected interest without due process when he was suspended for three days on conclusion that he had used excessive force). In each of these cases plaintiff's claim of lost reputation was augmented by the deprivation of another right, and thus the claim was actionable under § 1983.

Plaintiff in the case at hand alleges that he was deprived principally of two interests, in addition to lost reputation, which make his claim actionable under *Paul*. First, he claims that defendant's defamatory statements have deprived him of the use and enjoyment of his real property and amount to a taking of his land without due process.

While plaintiff clearly has a constitutionally protected interest in his real property, it is a very close call whether he actually has been deprived of that interest. Plaintiff apparently still occupies and controls the contested property, and there apparently has been no final decision made with respect to the land either by the Livingston

County Commission or the Grand River Township Board. On the other hand, there is probably little argument that defendants' actions have created a cloud on plaintiff's title, which would make it difficult for plaintiff to sell the land for its full value. In addition, plaintiff has probably been deprived of his right to quiet enjoyment of his land.

Second, plaintiff claims that his interest in continued employment as a state judge has been impaired. That is, in defaming plaintiff's reputation and publicly representing that he has committed a crime, defendants have damaged plaintiff's ability to continue working in an elective office, particularly as a judge who is elected to uphold and enforce the law, not violate it for his own purposes. *See Corbitt v. Andersen*, 778 F.2d 1471, 1474 (10th Cir.1985) ("[T]he right to pursue one's chosen profession unfettered by state action which does not comport with the 14th Amendment" distinguished plaintiff's § 1983 claim from "only a garden variety state libel case."); *Mullinax v. McElhenney*, 672 F.Supp. 1449, 1452 (N.D.Ga.1987) (recognizing plaintiff's constitutionally protected right "to practice her chosen profession free from unreasonable government interference").

The court finds that plaintiff's interest in his real property and his interest in continued employment in his chosen profession are, in combination, sufficient to establish a "tangible interest" beyond defamation, and thus state a cause of action under *Paul v. Davis*. While it is unclear from the current record whether defendants have actually deprived plaintiff of either of these interests, the court believes that that is a question of fact which is better left to the jury. Accordingly, it is hereby

ORDERED that the motion to dismiss by defendants New–Press, Bradley and McCann is denied. It is further

ORDERED that the motion to dismiss and for summary judgment by defendants Orville and Virginia Howsman and Gerald and Helen DeWitt is likewise denied.