Joseph **LOVE**, et al., Plaintiffs,

v.

Steve **BOLINGER**, et al., Defendants.

No. IP 95–1465 C B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

May 10, 1996.

Publication Granted May 22, 1996.

---

Linda D. Thompson, Indianapolis, IN, for Plaintiffs.

Ronald W. Frazier, Frazier Law Offices, John R. Maley, Barnes & Thornburg, Mary Ann Oldham, Office of the Corporation Counsel, John T. Roy, Stephenson Daly Morow & Kurnick, David L. Steiner, Deputy Attorney General, Sally F. Zweig, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, IN, for Defendants.

## ENTRY

BARKER, Chief Judge.

On June 14, 1995, Joseph Love died in his jail cell. His estate, his parents and his brother brought this lawsuit, alleging various federal and state constitutional causes of action against a number of state, county and city defendants, arising out of Joseph Love's arrest, the criminal proceedings against him, his death, and an alleged cover-up of the circumstances of his death. The matter is currently before the Court on Defendants Karl Manders' ("Manders") and Bob Ward's ("Ward") Motion to Dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the following reasons, the Defendants Motion to Dismiss is granted.

### I. Standard for Motion to Dismiss

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990), *quoting, Triad Assocs., Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). All well-pleaded allegations are presumed to be true and are viewed in the light most

---

1. Initially, defendants also moved, in the alternative, for summary judgment on the state law claims. Because plaintiffs have since made clear that they are bringing no state law claims against Defendants Manders and Ward, the Motion for Summary Judgment on state law claims is denied as moot.

favorable to the plaintiff; and we must accept as true all reasonable inferences to be drawn from those allegations. *Whirlpool Financial Corp. v. GN Holdings, Inc.,* 67 F.3d 605, 608 (7th Cir.1995); *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir.1995); *Richmond v. Nationwide Cassel L.P.,* 52 F.3d 640, 644 (7th Cir.1995). The only question is whether relief is possible under any set of facts that could be established consistent with the allegations. *Northern Trust Co. v. Peters,* 69 F.3d 123, 129 (7th Cir.1995).

## II. Background

The complaint alleges a plethora of federal and state constitutional violations against twenty-six defendants. Generally, plaintiffs allege that Joseph Love was falsely arrested by members of the Indiana State Police; that during the criminal proceedings against him, various defendants conspired to deny him adequate representation; that during and immediately after a competency hearing on June 14, 1996, various other defendants beat him and ultimately killed him by choking him; and that after this, various other defendants attempted to cover up the true facts surrounding his death. Plaintiffs do not allege that either Manders or Ward was involved in any of the acts occurring prior to Joseph Love's death. Therefore, a detailed summary of all of the factual allegations in the complaint is not necessary to address the issues concerning Manders and Ward.

Manders is the Coroner of Marion County, and Ward, the Chief Deputy Coroner. They are sued both in their individual and official capacities. The complaint alleges as follows: Manders and Ward prevented plaintiffs Gene and Johnie Love, parents of the decedent, from seeing the body of their son until June 20, 1995, six days after his death and after an autopsy had been performed. (Complaint, ¶ 57). An autopsy was performed on June 15, 1995, which "conclusively showed that Joe Love had a healthy heart", and also showed that Joe Love's body arrived at the patholo-

gy department of Indiana University with a purple and congested face and neck, "clearly visible during the autopsy and presented clear evidence of asphyxiation." Furthermore, the autopsy showed that Joe Love had blood in his stomach, lungs and throat, "all of which indicate internal trauma during the time he was still alive." (Complaint, ¶ 58). Ward and Manders withheld the full autopsy report from Love's family until October 1995, four months after the autopsy was performed, claiming to be awaiting toxicology reports which were actually completed by July 11, 1995. (Complaint, ¶ 62).

Despite the clinical findings, Manders and Ward appeared on television and proclaimed that Joseph Love had "just collapsed in the courtroom" and that he had died from a heart attack; and conveyed the impression that Joseph Love "had gone berserk in the courtroom, collapsing in a frenzied state that lead [sic] to his heart attack ..." (Complaint, ¶ 60). Subsequently, the "false story was changed" to statements and "leaks" that Joseph Love had died of asphyxiation. The official death certificate reflected death by asphyxiation. Another "false story" was then "leaked" to convey the impression to the public that "officers had sat on Joe Love to restrain him", accidentally causing asphyxiation.[2]

When Joseph Love's body was released on June 20, 1995, Ward told the Love family that all of the body parts were present. In fact, the brain and portions of the heart and throat were missing, as was discovered by an independent autopsy conducted that same day. (Complaint, at ¶ 63). Joseph Love's brain was given to his father Gene Love, in a bucket, in October 1995.[3] (Complaint, ¶ 68).

Finally, the complaint alleges that various defendants, including Manders and Ward, released stories to the media, accompanied by a mug shot of Joseph Love released by the Sheriff's Department, "for the purpose of demonizing the memory and image of Joe

---

2. The complaint does not allege specifically that Ward or Manders leaked or released this story, but that they knew or should have known that it was false.

3. The complaint does not specify who delivered the brain, but alleges that Manders and Ward knew or should have known that this would be horrifying to the family, and was intended to cause the family emotional distress and anxiety. (Complaint, ¶ 68).

Love in the public eye," for the purpose of discouraging any public interest or inquiry into the cause and manner of Joseph Love's death, and to "influence any potential jury or grand jury pool members by saturating the public with false information about the circumstances of Joe Love's death." (Complaint, at ¶ 71).

### III. Analysis

The court's job has been made extremely difficult by the plaintiffs' shotgun approach to this case. Both the complaint and the Response Brief defy all usual forms. By speaking in generalities rather than analyzing different claims separately, and by lumping together the numerous defendants, plaintiffs have greatly increased the amount of time and energy the court was required to expend trying to determine exactly which factual allegations might give rise to particular causes of action against Manders and Ward.[4]

### A. State Tort Claims

Although the language of the complaint makes it seem as if Plaintiffs are bringing state law claims of defamation and intentional infliction of emotional distress,[5] plaintiffs have simplified our task to some degree by declaring in their Response Brief that the sole bases for their claims against Manders and Ward are 42 U.S.C. §§ 1983 and 1985. (Response at 4). Plaintiffs state clearly, and we will take their statements at face value, that they "have not plead nor do they raise any tort claims in this present lawsuit", and that "any reference to criminal or tortious activity in the complaint is for the purpose of demonstrating overt acts in furtherance of the conspiracy or habit, pattern, and practice

of the entity that violated the rights of the Plaintiffs...." (See, Brief at 2, 8–9, 14). Thus any state law tort claims presented in the complaint are hereby dismissed. We will limit our present inquiry to whether the facts as pled, and any inferences that can reasonably be made from these facts, can state any claim against Defendants Manders and Ward under 42 U.S.C. §§ 1983 or 1985.

### B. § 1983

To bring a claim under § 1983, a plaintiff must allege (1) that an action taken by a defendant deprived the plaintiff of a right protected by the Constitution or laws of the United States and (2) that the defendant's action was taken under color of state law.[6] *Vasquez v. Hernandez,* 60 F.3d 325, 328 (7th Cir.1995), *reh'g denied, cert. denied,* —— U.S. ——, 116 S.Ct. 1545, 134 L.Ed.2d 648; *West v. Phillips,* 883 F.Supp. 308, 313 (S.D.Ind.1994). "The first step in analyzing a section 1983 claim is to identify the specific constitutional injury." *Vasquez,* 60 F.3d at 328.

Given the allegations against Manders and Ward, the issue may be narrowed as follows: whether the victim of state-occasioned killing, and/or his survivors, has any constitutional rights violated by a state-occasioned cover-up of the circumstances of his death. The complaint is unclear as to which constitutional rights were allegedly violated by the actions of Manders and Ward. In their Response Brief, plaintiffs allege that Manders and Ward acted under color of law "to deprive Joe Love of his rights to life and liberty, to equal access to the courts, to speech, to substantive and procedural due process, to be free of unwarranted and unreasonable searches and seizures, to privacy, and to

---

4. Rather than alleging that specific actions of particular defendants violated particular rights, the complaint charges, in a single introductory paragraph, that "[t]his action is brought pursuant to 42 U.S.C. 1983, 1985(1), (2), and (3) and 1988, Article VI, Section 2, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States and under the Constitution of the State of Indiana, Article 1, Sections 1, 9, 11, 12, 13, 14, 15, 16, 18, 19, 20, 21, 23, 26, and 37." (*Complaint,* ¶ 1).

5. The complaint alleges that:

Joe Love's brain was given to his father, Gene Love, in a bucket, in October, which Bob Ward and Karl Manders knew or should have known would be and was horrifying to the family, and which act was *intended to cause the family further emotional distress and anxiety.* (¶ 68). Joe Love was *publicly defamed* repeatedly in the media based upon stories released by ... Bob Ward and Karl Manders ... (¶ 71).

6. Defendants do not dispute that the relevant actions were taken "under color of state law".

fundamental fairness and to deprive his family of a full, fair and impartial investigation and prosecution of the people who killed Joe Love and who helped to cover up the killing ..." (Brief at 4–5, 12).

### 1. Joseph Love's Constitutional Rights

■■■ "After death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he may be deprived." *Whitehurst v. Wright,* 592 F.2d 834, 840 (5th Cir.1979). The alleged cover-up by Manders and Ward took place after Joseph Love was killed, and thus could not have violated any of Joseph Love's constitutional rights. *Id.; Guyton v. Phillips,* 606 F.2d 248 (9th Cir.1979) ("the Civil Rights Act, 42 U.S.C. §§ 1983 and 1985, does not provide a cause of action on behalf of a deceased based upon alleged violation of the deceased's civil rights which occurred after his death."). We do not hold that cover-up of a wrongful death is without civil or criminal effect; rather, we hold that "the victims of a cover-up are the decedent's survivors, not the decedent himself." *Gibson,* 910 F.2d at 1523, *citing, Bell v. City of Milwaukee,* 746 F.2d 1205, 1264 (7th Cir.1984). Thus, to the extent that plaintiffs allege that, by covering up the circumstances of Joseph Love's death, Manders and Ward violated Joseph Love's Constitutional rights, the Motion to Dismiss is **granted.**

### 2. Constitutional Rights of Joseph Love's Survivors

#### a. Fourth Amendment Rights

■ Plaintiffs allege that the removal from Joseph Love's body of certain body parts constituted an unreasonable search and seizure in violation of the Fourth Amendment. To the extent that they allege this was a violation of Joseph Love's Fourth Amendment rights, the motion to dismiss is granted for the reasons discussed above. To the extent they allege that this was a viola-

tion of the survivors' Fourth Amendment rights, it also lacks merit because Joseph Love's survivors have no Fourth Amendment rights with regard to an autopsy performed on the body of their deceased relative. *Town of Brookline v. Operation Rescue,* 762 F.Supp. 1521, 1524 (D.Mass.1991), *quoting, Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975) (plaintiff "cannot rest his claim to relief on the legal rights or interest of third parties").[7] Furthermore, we seriously doubt that the Fourth Amendment right to be free of unreasonable searches and seizures, which typically arises in the context of police searches of criminal suspects, even extends to autopsies conducted by county coroners. Thus, to the extent that Plaintiffs § 1983 claim is based upon a violation of their Fourth Amendment rights, the Motion to Dismiss is **granted.**

#### b. Defamation

■ Plaintiffs allege that Joe Love was publicly defamed based upon stories released by several defendants, among them Manders and Ward. This allegation fails to state a § 1983 claim because, as we have already discussed, Manders and Ward could not have violated the rights of Joseph Love after his death. Furthermore, defamation is not actionable under § 1983, because reputation is neither a liberty nor a property interest within meaning of due process clause. *Smart v. Board of Trustees of the University of Illinois,* 34 F.3d 432, 434 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 941, 130 L.Ed.2d 885 (1995), *citing, Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Buckley v. Fitzsimmons,* 20 F.3d 789, 797 (7th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 740, 130 L.Ed.2d 642 (1995). Therefore, to the extent plaintiffs attempt to state a § 1983 claim based upon allegations of defamatory statements intended to "de-

7. On a related note, courts have held that, because of the availability of post-deprivation remedies under state law, there is no constitutional interest implicated by autopsies performed on a relative's body. *See, Arnaud v. Odom,* 870 F.2d 304, 310 (5th Cir.1989), *cert. denied,* 493 U.S. 855, 110 S.Ct. 159, 107 L.Ed.2d 117 (1989) (no liberty or privacy interest in being free from state-occasioned mutilation to the body of a deceased relative); *Fuller v. Marx,* 724 F.2d 717 (8th Cir.1984) (no constitutional invasion occasioned by removal of certain organs from body of deceased relative during autopsy).

monize" Joseph Love, the Motion to Dismiss is **granted**.[8]

their § 1983 claim on a denial of equal protection, the motion to dismiss is **granted**.

### c. Fifth Amendment Due Process Clause

 Plaintiffs have also failed to state a claim against Manders and Ward under the Due Process Clause of the Fifth Amendment, which applies only to federal officials. *Haynes v. City of Chicago*, 1996 WL 197675, at *1–2 (N.D.Ill., Apr. 22, 1996) (fifth amendment claims must be dismissed because plaintiff names no federal officials in complaint); *LaBoy v. Zuley*, 747 F.Supp. 1284, 1286 (N.D.Ill 1990). Manders and Ward, as Coroner and Chief Deputy Coroner of Marion County, are not federal officials. Thus, to the extent Plaintiff's allege that Manders and Ward violated Plaintiffs' Fifth Amendment Right to Due Process, the Motion to Dismiss is **granted**.

### d. Equal Protection Clause

 "To state an equal protection claim, a § 1983 plaintiff must allege that a state actor purposefully discriminated against him because of his identification with a particular (presumably historically disadvantaged) group." *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir.1994); *Minority Police Officers v. City of South Bend*, 801 F.2d 964, 966 (7th Cir., 1986) ("the Equal Protection Clause of the Fourteenth Amendment is violated only if the defendants have acted with a discriminatory purpose or intent."). Plaintiffs do not allege that Joseph Love's survivors were themselves discriminated against because of membership in a particular class.[9] Rather, they claim that Joseph Love was denied equal protection because of his membership in the class of persons "perceived to have mental disabilities". (Response, at 18). As we have already noted, Manders and Ward could not have violated Joseph Love's rights. Therefore, to the extent that plaintiffs base

### e. Denial of Access to the Courts

 "The right of individuals to pursue legal redress for claims which have a reasonable basis in law and fact is protected by the First and Fourteenth Amendments". *Vasquez*, 60 F.3d at 328, *citing, Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741, 103 S.Ct. 2161, 2169, 76 L.Ed.2d 277 (1983). "A corollary of this right is that efforts by state actors to impede an individual's access to courts ... may provide the basis for a constitutional claim under 42 U.S.C. § 1983." *Id.; see also, Bell*, 746 F.2d at 1261.

 Plaintiffs allege that "Joe Love's family members are entitled to prosecutions of their son's murderers and the people who have helped cover up his murder ..." (Brief at 12). This allegation is incorrect, and insufficient to state an access to the courts claim under § 1983, as there is no federal constitutional right to have criminal wrongdoers brought to justice. *Nieves–Ramos v. Gonzalez–De–Rodriguez*, 737 F.Supp. 727 (D.Puerto Rico 1990) (no cause of action under § 1983 for failure to prosecute crime), *citing, Linda R.S. v. Richard D.*, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or non prosecution of another."); *Johnson v. Craft*, 673 F.Supp. 191, 193 (S.D.Miss.1987) (dismissing action brought by victim of assault alleging conspiracy to prevent prosecution of perpetrators). Therefore, to the extent that plaintiffs access to the courts claim rests upon allegations that Manders' and Ward's actions prevented the investigation and prosecution of those responsible for Joseph Love's death, the motion to dismiss is **granted**.

---

**8.** *This is not to say that, to the extent that plaintiffs argue that defamatory statements were intended to discourage investigation into Joseph Love's death, or to discourage his survivors from bringing civil claims of excessive force or wrongful death, they have not successfully stated a claim for denial of access to the courts. The court will address this issue below.*

**9.** To the extent plaintiffs purport to base an equal protection on the existence of a supposed "caste system" under which those who are not members of a "politically privileged class" are discriminated against, they have failed to adequately allege that they are members of an identifiable protected class. (See Response, at 12).

■ This is not to say, however, that plaintiffs have not alleged facts sufficient to support a denial of access claim. While there is no cause of action for failure to prosecute, a cover-up of a killing which obstructs "legitimate efforts to vindicate the killing through judicial redress interferes with the due process right of access to the courts." *Bell*, 746 F.2d at 1261, *citing, Ryland v. Shapiro*, 708 F.2d 967; *see also, Vasquez*, 60 F.3d at 328 ("when police officers conceal or obscure important facts about a crime from its victims, rendering hollow the right to seek redress, constitutional rights are undoubtedly abridged"). Defendants argue that the right of access encompasses nothing more than the right to initiate a lawsuit, and therefore, because plaintiffs have brought this lawsuit, their right of access to the courts has not been abridged. This is not an accurate characterization of the right to access. To deny access, defendants "need not literally bar the courthouse door or attack plaintiffs' witnesses." *Vasquez*, 60 F.3d at 329. The right is lost where officials "shield from the public and the victim's family key facts which would form the basis of the family's claims for redress." *Id.* In other words, formal access to the courts is not enough; access must also be "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977).

■ At the same time it is important to recognize that "[t]here is no general constitutional or federal 'right to truth.'" *Bolden v. Ramos et al.*, 1996 WL 66135 at *11 (N.D.Ill, Feb. 13, 1996), *citing, Vasquez*, 60 F.3d at 328. While it is clear that a cover-up such as the one alleged in this case can result in a denial of access to the courts, it is equally clear that there are circumstances under which a cover-up does not deny access to the courts. Recent Seventh Circuit caselaw on this point establishes that a cover-up leads to a denial of access to the courts only where the cover-up was to some extent successful. In *Bell*, the Seventh Circuit held that a successful twenty-year cover-up of a

police killing interfered with the due process right of access. 746 F.2d 1205. The *Bell* court expressly limited the holding to the "particularly egregious set of facts" presented in that case. *Id.*, at 1264. More recent Seventh Circuit cases have reached a different result from that in *Bell*. For instance, in *Vasquez* the Seventh Circuit reasoned that "the cornerstone of our decision in *Bell* was that the conspiracy had prevented a full and open disclosure of facts crucial to the cause of action, rendering hollow the plaintiffs' right of access." 60 F.3d at 329. The court went on to dismiss the Vasquez' denial of access claim, holding that where the actual circumstances surrounding the shooting were revealed publicly within six months of the incident, and plaintiffs were granted access to records of investigation of the incident/cover-up, their constitutional rights "were ultimately preserved". *Id.* Similarly, in *Gibson*, the Seventh Circuit held that even where a plaintiff successfully alleges the filing of intentionally false and inaccurate reports, he cannot state a claim for denial of access to the courts without alleging some concrete injury to the decedent's survivors resulting from the alleged cover-up. 910 F.2d at 1523–24; *see also, Thompson v. Boggs*, 33 F.3d 847, 852–53 (7th Cir.1994) (police officers who omitted information from police reports did not deny access to court, since facts known to plaintiff were sufficient to enable him to promptly file the instant lawsuit, unlike *Bell*, "where the true facts were concealed thereby denying the plaintiffs the opportunity to file a lawsuit until some twenty years after the fact."); *Bolden*, 1996 WL 66135 at *11 ("Where plaintiff is aware of alleged cover-up when filing complaint, he was hardly deceived into forgoing legal remedies.").

■ Plaintiffs do not allege that their claims against the other defendants in the present lawsuit have been hindered, devalued, or otherwise damaged by the cover-up.[10] Nor do they allege that they were prevented or otherwise hindered in filing a

---

**10.** Even if they did allege injury in the present lawsuit, it is too soon to tell, at this early stage in the proceedings, whether plaintiffs have been disadvantaged by defendants' conduct.

state-law wrongful death suit.[11] The very fact that allegations of the murder and of the cover-up appear together in a single complaint, filed within five months after Joseph Love's death, leaves no doubt that plaintiffs were not hindered in bringing a lawsuit to vindicate their rights. We find, therefore, that the facts as pled with regard to the cover-up of Joseph Love's death cannot state a claim for denial of access to the courts, in violation of § 1983. Accordingly, the Motion to Dismiss is **granted** with regard to plaintiffs' § 1983 claim.

### C. § 1985 Conspiracy Claim

Four elements comprise a civil conspiracy under § 1985: (1) a conspiracy, (2) for purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of laws, (3) an act in furtherance, and (4) injury. *Heideman v. Wirsing*, 840 F.Supp. 1285, 1301 (W.D.Wis. 1992), *aff'd*, 7 F.3d 659 (7th Cir.1993), *citing, United Brotherhood of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). Plaintiffs' § 1985 claim is defeated by our holding that they have not suffered any constitutional deprivation, or injury, at the hands of Manders and Ward. Furthermore, plaintiffs' § 1985 claim is also doomed by their failure to allege any agreement or plan, which is a critical element of a conspiracy action. *Sanders v. City of Indianapolis*, 837 F.Supp. 959, 963 (S.D.Ind.1992); *Heideman*, 840 F.Supp. at 1301 (where a complaint sets forth no facts of a previous agreement or plan, it has failed to state claim for § 1985 conspiracy).[12] Even assuming that plaintiffs had successfully alleged both the existence of a conspiracy and a constitutional injury, they have still failed to allege facts necessary to state a claim under the various subsections of § 1985.

### 1. § 1985(1)—federal actor requirement

"On its face, § 1985(1) relates solely to federal officers and federal office holders." *Baron v. Carson*, 410 F.Supp. 299, 301 (N.D.Ill.1976); *Kush v. Rutledge*, 460 U.S. 719, 724, 103 S.Ct. 1483, 1487, 75 L.Ed.2d 413 (1983).[13] Plaintiffs concede that Manders and Ward are not "federal actors" as such, but argue that § 1985(1) nonetheless applies here because Manders and Ward are state employees who have sworn to support the Constitution of the United States. This argument is without merit. The Eleventh Circuit has rejected a similar argument that a bank officer was a person holding "any office, trust, or place of confidence under the United States," and was therefore a "federal official" for purposes of § 1985(1). *Morast v. Lance*, 807 F.2d 926, 929 (11th Cir.1987); *see also, Baron*, 410 F.Supp. at 301 (rejecting argument for coverage of a county official under § 1985(1)); *Town of Brookline v. Operation Rescue*, 762 F.Supp. 1521, 1523 (D.Mass.1991) (§ 1985(1) applies only to federal officers, not to state officials), *citing, Canlis v. San Joaquin Sheriff's Posse Comitatus*, 641 F.2d 711, 718 (9th Cir.), *cert. denied*, 454 U.S. 967, 102 S.Ct. 510, 70 L.Ed.2d 383 (1981).[14] Therefore, to the extent plain-

---

**11.** In fact, it does not appear that plaintiffs have attempted to bring any action other than the present one.

**12.** *See also, House v. Belford*, 956 F.2d 711, 721 (7th Cir.1992) ("A conspiracy may be demonstrated by circumstantial evidence, however, mere allegations of a conspiracy are insufficient to withstand a motion to dismiss."); *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir.1988), *cert. denied*, 486 U.S. 1043, 108 S.Ct. 2035, 100 L.Ed.2d 620 (1988) (one of the elements of a prima facie case of conspiracy is "an express or implied agreement among defendants to deprive plaintiff of his or her constitutional rights").

**13.** Section 1985(1) prohibits a conspiracy:

... to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; *or to induce by like means any officer of the United States to leave any State, district, or place where his duties as an officer are required to be performed*. ...

**14.** *Compare, Lewis v. News–Press & Gazette Co.*, 782 F.Supp. 1338, 1342 (W.D.Mo.1992) (holding that a state judge held "an office, trust or place of confidence under the United States", and therefore has standing to raise a claim under § 1985(1)). In *Lewis*, the specific dispute at issue involved the judge's decision on a federal constitutional question, and the court specifically limited its holding to the "unique fact situation" of that case. Furthermore, we note that in *Lewis*, as in most § 1985(1) cases, the official was a plaintiff suing for conspiracy to interfere with his

tiffs purport to state a claim under § 1985(1), the motion to dismiss is **granted**.[15]

### 2. §§ 1985(2) and (3)—class-based discrimination

■ To withstand a motion to dismiss claims under the second clause of § 1985(2), or under § 1985(3), plaintiffs must allege facts demonstrating that class-based discrimination was the reason for defendants' conduct. *Wright v. Ill. Dept. of Children & Family Services*, 40 F.3d 1492, 1507 (7th Cir.1994); *Martin v. Youngstown Sheet & Tube Co.*, 911 F.2d 1239, 1245 (7th Cir.1990) ("[A]ctions" under 42 U.S.C. §§ ... 1985(2) [and] 1985(3) rely on the existence of racial or other class-based invidious discriminatory animus); *Lowe v. Letsinger*, 772 F.2d 308, 311 (7th Cir.1985); *LaBoy*, 747 F.Supp. at 1289; *Kush*, 460 U.S. at 726, 103 S.Ct. at 1487. As discussed above, plaintiffs do not allege that Joseph Love's survivors are members of any protected class.[16] Therefore, to the extent that plaintiffs purport to state a claim under § 1985(2) and (3), the motion to dismiss is granted.[17]

### D. Plaintiffs' Request for Sanctions

At several different points in their Response Brief, plaintiffs request Rule 11 sanctions against Defendants, claiming that defendants "have raised wholly frivolous issues ..., and issues completely contrary to well-established law, such as the claim that an ante-litum notice was necessary prior to fil-

ing claims under 42 U.S.C. 1983 or 1985 ..." (Response Brief at 23).[18] Plaintiff's request for sanctions is baseless and is **denied**.

### CONCLUSION

For the reasons discussed above, we find that plaintiffs have failed to allege facts sufficient to state a cause of action against defendants Manders or Ward under 42 U.S.C. §§ 1983 or 1985.

It is so ORDERED.

---

duties, whereas in this case, the officials whose duties were allegedly interfered with are actually defendants.

15. Plaintiffs also fail to state a claim under the first clause of § 1985(2), under which "a plaintiff must prove violation of a right actually to attend or testify in a federal court" *Rochon v. Dillon*, 713 F.Supp. 1167, 1173 (N.D.Ill.1989).

16. As discussed above, only the rights of Joseph Love's survivors are at issue because Manders and Ward did not become involved in the events giving rise to this lawsuit until after Joseph Love's death.

17. Because we find that there was no underlying constitutional or statutory violation, we need not address the issues of quasi-judicial or qualified immunity raised in the Motion to Dismiss. Simi-

larly, we need not address the municipal liability issue, which is grounded in plaintiff's contention that defendant Manders is a "policymaker" who can incur liability for the county. Because we have determined that Manders' and Ward's actions provide no basis for a claim, the question of municipal liability for those actions is moot. Accordingly, both the individual capacity and official capacity claims against Manders and Ward are dismissed.

18. This particular argument is typical of the way in which plaintiffs misunderstand the issues presented here. Defendants' ante-litum notice argument was preceded by the heading "VI. State Law Claims", and defendants made it absolutely clear that the ante-litum notice issue was being raised solely as a defense to state law tort claims which they understandably thought were raised in the complaint. (See, Defendant's Memorandum, at 19–22).