990 F.Supp. 606 (1997)
The ESTATE OF Derrick T. CONNER, by its Co-Administrators, James CONNER and Charles Miles, in their official capacity, and James Conner and Doris Miles, in their individual capacity, Plaintiffs,
v.
Steven AMBROSE and Frank Owens, in their official and individual capacity, City of Elkhart, Indiana, South Bend Medical Foundation, Gerald Quinn, M.D., in his official and individual capacity, Jeanette K. Albert, in her capacity as Coroner, John Mortakis, in his individual capacity, and the City of South Bend, Indiana, Defendants.
No. 3:96 CV 0236 AS.
United States District Court, N.D. Indiana, South Bend Division.
December 23, 1997.
*607 *608 *609 *610 Douglas M. Grimes, Gary, IN, for Derrick T. Conner.
Martin W. Kus, Newby Lewis Kaminski and Jones, LaPorte, IN, Michael J. Grattan, III, Elkhart City Atty.'s Office, Elkhart, IN, Robert M. Kelso, Kightlinger and Gray, Indianapolis, IN, for Steven Ambrose, City of Elkhart, Indiana.
Michael J. Grattan, III, Elkhart City Atty.'s Office, Elkhart, IN, Robert M. Kelso, Kightlinger and Gray, Indianapolis, IN, for Frank Owens.
Edward N. Kalamaros, Patrick J. Hinkle, Edward N. Kalamaros & Associates, South Bend, IN, for South Bend Medical Foundation, M. Gerald Quinn, M.D.
Michael F. DeBoni, John D. Ulmer, Yoder Ainlay Ulmer and Buckingham, Goshen, IN, for Jeanette K. Albert.
Robert C. Rosenfeld, South Bend, IN, for John Mortakis, City of South Bend.

MEMORANDUM AND ORDER
ALLEN SHARP, District Judge.
This cause is before the court on defendants' Albert, Quinn and South Bend Medical Foundation Motions for Summary Judgment; defendants' Ambrose, Owens and the City of Elkhart Motion for Partial Summary Judgment and defendants' Mortakis and the City of South Bend Motion to Dismiss which this court converted to a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 12(c). All issues have been fully briefed. The court heard oral arguments on September 19, 1997 and now rules on each pending motion as follows.

JURISDICTION
The present cause of action is brought under Title 42 United States Code § 1983, *611 § 1988 and the First, Fourth, Fifth, Eight and Fourteenth Amendments to the United States Constitution. Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1341, and 1343. Pendant jurisdiction is also invoked for the state causes of action.

FACTS[1]
Derrick Conner (Conner) was a twenty-two year old African-American male. Derrick is now deceased. This cause of action is brought by his estate which is administered by James Conner, the biological father and Charles Miles, the step-father and individually by Doris Miles, the biological mother (collectively, Plaintiffs).
The plaintiffs allege the illegal use of deadly force against Conner by police officers Steven Ambrose (Ambrose) and Frank Owens (Owens). Plaintiffs also allege that the City of Elkhart, Indiana (Elkhart) failed to establish proper policy and training for its police officers and that it negligently allowed Ambrose to remain on the force in spite of numerous citizen complaints. Additionally, plaintiffs allege medical negligence against Jeanette Albert (Albert), County Coroner, for her delegation of Conner's autopsy to Gerald Quinn, M.D. (Quinn). They further allege Quinn negligently performed said autopsy. Additionally, they claim South Bend Medical Foundation (SBMF) was negligent for allowing the acts of Albert and Quinn. Finally, plaintiffs claim police officer John Mortakis (Mortakis) and the City of South Bend (South Bend) were negligent in conducting a polygraph test that was administered to two witnesses after the death of Conner.

1. Claims Against Ambrose, Owen and Elkhart
Derrick Connor was shot and killed by officer Ambrose on May 18, 1995. Plaintiffs' allege that Ambrose had no probable cause to chase, stop or arrest Conner prior to the shooting as there was no outstanding warrant regarding Conner. Additionally, even if Ambrose believed probable cause existed for Conner's detention or arrest, plaintiffs claim that the shooting was unjustified and was an unreasonable use of deadly force.
At the time of the shooting, neither Ambrose nor Owens were in police uniform. Ambrose allegedly attempted to stop Conner for questioning. Conner ran and Ambrose pursued. Ambrose contends Conner had a weapon, was facing him at the time, and therefore the shooting was justified. Unfortunately, Owens did not see Ambrose fire at Conner, nor did he see Conner pull a gun as he was out of the line of sight when the incident occurred. A gun was found at the scene, however, plaintiffs contend it was a "throw-away" gun that was dropped by the police in an effort to cover up their improper use of force.
In Count One of their complaint the plaintiffs file claims against Ambrose and Owens both individually and in their official capacity for use of deadly force without justification. Additionally they charge Elkhart claiming the city failed to properly discipline and control its employees. Plaintiffs also contend the city negligently hired and retained police personnel. Plaintiffs assert that the use of deadly force against Conner was the result of the policy, practice and custom of the city to inadequately train and supervise law enforcement officers. Finally, in Count Six, plaintiffs allege that Ambrose previously stalked, discriminated against and harassed Conner.

2. Claims Against Albert, Quinn and SBMF
After the shooting, Conner was taken to the Coroner for an autopsy. Albert was the county coroner at the time. Pursuant to routine procedure, she called in the pathologist on duty. A dispute exists regarding the autopsy performed on Conner as to whether or not some bullets entered Conner from the front and some entered from the back. However, Quinn allegedly failed to properly document the autopsy findings with photographs, wound measurements and test results. Therefore, the plaintiffs claim the autopsy was flawed.
In anticipation of suit, the plaintiffs called a forensic pathologist to perform a second *612 autopsy. According to the forensic pathologist the initial autopsy was not properly performed and some of the bullet wounds were damaged making it impossible to determine the direction of the bullet's entry. Due to the information provided by plaintiffs' pathologist, Count Two claims that defendant Albert, the Coroner, was acting under color of state law and assumed a custodial relationship over the body of Conner; that she improperly delegated the autopsy to Quinn, who was the pathologist on call at the time Conner's body came in; and that Quinn breached his duty of care by negligently performing the autopsy. Plaintiffs claim that Quinn allegedly cut out sections of the bullet wounds, misinterpreted the nature of the wounds and attempted to cover up the fact that all of the bullets that struck Conner supposedly entered through Conner's back.
In addition, Count Three holds Albert responsible for the negligent "employment" of Quinn. Quinn was a general pathologist and plaintiffs allege Albert should have called in a forensic pathologist. They further allege Albert failed to properly supervise Quinn during the autopsy. Finally, Count Four claims that SBMF breached its duty of care by assigning Quinn to perform an autopsy knowing that Quinn was unqualified.

3. Claims Against Mortakis and South Bend
During the investigation regarding Conner's death, South Bend requested officer Mortakis to conduct a polygraph examination of two supposed witnesses. Allegedly, Mortakis influenced the responses to the polygraph questions by making inappropriate comments to the witnesses and threatening them. Supposedly, Mortakis also withheld evidence that may have assisted the Grand Jury in its investigation of the murder charge against Ambrose. As a result, Count Five alleges that officer Mortakis improperly administered and improperly interpreted a polygraph test he gave to two witnesses of the Conner shooting. Plaintiffs allege that Mortakis covered up critical facts that should have been presented to the Grand Jury. Because Mortakis was acting under the color of law, plaintiffs also claim South Bend is liable for negligence and failing to supervise Mortakis.

4. Miscellaneous Claims
In Count Six, plaintiffs additionally claim that Owens covered up the fact that Conner did not possess a weapon in an effort to protect Ambrose. Furthermore, plaintiffs claim that Owens, Quinn and Mortakis obstructed justice. The plaintiffs argue that the defendants deprived Conner of his constitutional rights, were negligent in the performance of their duties, that they conspired to cover up certain facts and evidence, and that their actions caused plaintiffs great mental and emotional pain and distress. Consequently, plaintiffs request compensatory and punitive damages as well as costs and fees.

I. DISCUSSION
Each defendant has filed a motion for Summary Judgment with respect to the charges against it. Because there are five separate motions currently before this Court the Court will deal with the common claims and then, to the extent that the claims differ, will address the claims as to each individual defendant.

A. SUMMARY JUDGMENT STANDARD
Rule 56(c) of the Federal Rules of Civil Procedure provides that a motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); Anderson v.. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Anderson v. Baxter Healthcare Corp., 13 F.3d 1120 (7th Cir.1994); Leisen v. City of Shelbyville, 968 F.Supp. 409 (S.D.Ind.1997). A thorough discussion of Rule 56 can be found in a trilogy of cases decided in 1986 by the Supreme Court of the United States.[2] *613 See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)[3]; Anderson, 477 U.S. 242, 106 S.Ct. 2505. Celotex addressed the initial burdens of the parties under Rule 56, and Anderson addressed the standards under which the record is to be analyzed within the structure of Rule 56.[4]
The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. Celotex, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56). A question of material fact is a question which will be outcome determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510. Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "designate `specific facts shows that there is a genuine [material] issue for trial.'" Id. The nonmoving party cannot rest on its pleadings, Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-21 (7th Cir. 1994), reh'g denied; Hughes v. Joliet Correctional Ctr., 931 F.2d 425, 428 (7th Cir.1991), nor may that party rely upon conclusory allegations in affidavits. Cusson-Cobb v. O'Lessker, 953 F.2d 1079, 1081 (7th Cir.1992).
This court is not required to draw every conceivable inference from the record  only those inferences that are reasonable  in the light most favorable to the non-moving party. Doe v. R.R. Donnelley & Sons Co., 42 F.3d 439 (7th Cir.1994); Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232 (7th Cir.1991), reh'g denied; Ammons-Lewis v. Metropolitan Water Reclamation Dist. of Greater Chicago, No. 93 C 880, 1997 WL 80949 (N.D.Ill. Feb.21, 1997).

B. RELEVANT LAW
Prior to considering defendants' summary judgment motions the Court must examine the applicable law. Because plaintiffs have set forth numerous legal bases for their claims, the Court will first discuss each legal principle and determine whether or not plaintiffs have properly stated a claim. The Court will then address the relevant legal principles with respect to each defendant.

1. Constitutional Amendments
Plaintiffs bring their claims under the First, Fourth, Fifth, Eight and Fourteenth Amendments. The scope of each amendment as it is relevant to the individual claims against each defendant is set forth below.

First Amendment
This amendment protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition his government for redress of grievances. U.S. Const.Amend. 1. Where the alleged wrongdoing occurred under color of state law, a claim cannot be asserted directly under this amendment as the amendment applies only to federal and not to state conduct. See Flesch v. Eastern Pennsylvania Psychiatric Inst., 434 F.Supp. 963 (E.D.Pa.1977). The relevance of the First Amendment to actions involving state conduct is that it provides substantive meaning to the provisions *614 of the Fourteenth Amendment insofar as it is "incorporated" into the Fourteenth Amendment's Due Process Clause. See generally, Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc., 425 U.S. 748, 749 n. 1, 96 S.Ct. 1817, 1819 n. 1, 48 L.Ed.2d 346 (1976); Bigelow v. Virginia, 421 U.S. 809, 811, 95 S.Ct. 2222, 2227, 44 L.Ed.2d 600 (1975); Schneider v. New Jersey, 308 U.S. 147, 160, 60 S.Ct. 146, 150, 84 L.Ed. 155 (1939); DeJonge v. Oregon, 299 U.S. 353, 364, 57 S.Ct. 255, 259-260, 81 L.Ed. 278 (1937).
To prevail on a First Amendment claim under § 1983, a plaintiff must establish that (1) its "conduct is deserving of [F]irst [A]mendment protection" and that (2) the Defendants' conduct "was motivated by or substantially caused by [plaintiff's] exercise of free speech." Rattner v. Netburn, 930 F.2d 204, 208. Furthermore, the plaintiff has the burden of establishing that he engaged in conduct protected by the First Amendment. Mt. Healthy City School Dist. Bd. of Ed. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).
The First Amendment protects the right of an individual to speak freely, to advocate ideas, to associate with others, and to petition his government for redress of grievances. It also protects an individual's rights of association. There is no evidence in the record that Conner was engaged in a protectable activity prior to his death. Moreover, there certainly was no protected activity after his death. As to any first amendment deprivation, plaintiffs therefore have failed to state a claim.

Fourth Amendment
This amendment protects the right of the people to be "secure in their persons ..., against unreasonable searches and seizures" and shall not be violated but upon probable cause. U.S. Const.Amend. IV. While a specific constitutional right, such as the right to resist an illegal search exists, the Fourth Amendment protections against searches and seizures cannot be triggered simply because a person is acting on behalf of the government, rather, the protections will only apply to governmental conduct which can reasonably be characterized as a "search" or "seizure". U.S. v. Attson, 900 F.2d 1427 (9th Cir.1990), cert. denied, 498 U.S. 961, 111 S.Ct. 393, 112 L.Ed.2d 403. Defendants argue that Conner was not "seized" and therefore had no Fourth Amendment right. This Court will not wade into a lengthy dissertation on search and seizure. A "seizure" occurs when a person is physically touched by police or when he submits to a show of authority by the police. Bella, 24 F.3d at 1255 (citing California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)). For the present, the Court finds sufficient evidence in the record to potentially support a Fourth Amendment claim. However, a person's Fourth Amendment rights do not survive his death. See Love v. Bolinger, 927 F.Supp. 1131 (S.D.Ind. 1996); Estate of Johnson by Castle v. Village of Libertyville, 819 F.2d 174 (7th Cir.1987); Wise v. City of Chicago, 308 F.2d 364 (7th Cir.1962), cert. denied, 372 U.S. 944, 83 S.Ct. 934, 9 L.Ed.2d 969 (1963). Additionally, constitutional rights of privacy are personal and cannot be asserted by a deceased person's next of kin. Swickard v. Wayne Co. Med. Examiner, 438 Mich. 536, 475 N.W.2d 304, 312 (1991). "The right [of privacy] is not assignable, and while the cause of action may or may not survive after his death, according to the survival rules of the particular state, there is no common law right of action for a publication concerning one who is already dead." Prosser, Torts (4th ed), S 117, p 815. To the extent that plaintiffs' claims are based on any Fourth Amendment violation occurring after Conner's death, they fail as a matter of law. To the extent that Fourth Amendment claims are directed against defendants in an official capacity they are barred by the Eleventh Amendment. However, issues of fact remain as to whether Conner's rights were violated prior to his death and therefore, to the extent that Fourth Amendment claims are directed against defendants in an individual capacity they remain intact.

Fifth Amendment
The Fifth Amendment provides that no person shall be deprived of "life, liberty, or property, without due process of law." *615 U.S.C. Const.Amend. V. This due process clause applies only to the federal government, while the Fourteenth Amendment due process clause applies to states. Love, 927 F.Supp. 1131, 1136; Haynes v. City of Chicago, No. 95 C 7205, 1996 WL 197675 (N.D.Ill. Apr.22, 1996); Shoemaker v. City of Lock Haven, 906 F.Supp. 230 (M.D.Pa.1995); Lyle v. Dodd, 857 F.Supp. 958 (N.D.Ga.1994). To the extent that "due process" is concerned in the present case, plaintiffs have no Fifth Amendment claims. Any claims by plaintiff fall under the Fourteenth Amendment.

Eighth Amendment
This amendment prohibits "cruel and unusual punishment." Eighth Amendment protections only apply to persons "convicted of a crime and therefore subject to punishment." See U.S.C. Const.Amend. VII; see also, Baker v. Putnal, 75 F.3d 190 (5th Cir.1996); Fillmore v. Ordonez, 829 F.Supp. 1544 (D.Kan.1993), aff'd, 17 F.3d 1436; Frahm v. Starks, 809 F.Supp. 26 (E.D.Mich. 1992), aff'd, 996 F.2d 1215. A "detainee", unlike a convicted prisoner, is protected by the Due Process Clause of the Fourteenth Amendment. See generally, Fickes v. Jefferson Co., 900 F.Supp. 84 (E.D.Tex.1995); Lock v. Jenkins, 641 F.2d 488 (7th Cir.1981); Irwin v. City of Hemet, 22 Cal.App.4th 507, 27 Cal.Rptr.2d 433 (1994). Even an arrestee's suicide was found not to constitute an Eighth Amendment violation because the state does not acquire the power to punish (with which the Eighth amendment is concerned) until after it has secured a formal adjudication of guilt. Irwin, 22 Cal.App.4th 507, 27 Cal.Rptr.2d 433.
Because Conner was not a convicted prisoner or even "convicted of a crime" pending incarceration, the Plaintiffs' Eighth Amendment claims are inapplicable as to all defendants in this case.

Fourteenth Amendment
The Equal Protection clause of the Fourteenth Amendment declares that no state shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const.Amend XIV. However, the Fourteenth Amendment does not provide citizens a "constitutionally guaranteed right to live" which can form basis for § 1983 action. U.S.C. Const.Amend. XIV; 42 U.S.C. § 1983. Furthermore, the Due Process clause of this amendment does not purport to supplant traditional tort law. It should not be interpreted to impose Federal duties that are analogous to those traditionally imposed by state tort law.
While defendants are correct that the Supreme Court has held that "all claims that law enforcement officers have used excessive force  deadly or not  in the course of an arrest, investigatory stop, or other `seizure' of a free citizen should be analyzed under the Fourth Amendment and its `reasonableness' standard, rather than under a `substantive due process' approach," Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (emphasis in Estate of Phillips v. City of Milwaukee, 123 F.3d 586 (7th Cir.1997)), this does not eliminate all of plaintiffs' Fourteenth Amendment claims. The Supreme Court has repeatedly held that a natural parent has a protectable liberty interest "in the companionship, care, custody, and management of his or her children ..." Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972); Lassiter v. Dept. of Soc. Serv. of Durham County, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397-98, 71 L.Ed.2d 599 (1982). Additionally, the Seventh Circuit has recognized that the parent-child relationship is a liberty interest protected by the Due Process Clause of the Fourteenth Amendment and that an intentional, reckless or lawless killing of a child violates the parent's substantive constitutional guarantees. Sherrod v. Berry, 827 F.2d 195, 207 (7th Cir.1987); Bell v. City of Milwaukee, 746 F.2d 1205, 1242-1245 (7th Cir. 1984). See also, Doty v. Carey, 626 F.Supp. 359, 362 (N.D.Ill.1986). Plaintiffs have properly pleaded their claims under this amendment.

2. Section 1983
Title 42 U.S.C. § 1983 provides a remedy for a person deprived of a right, privilege or *616 immunity guaranteed him or her by the Constitution and laws of the United States. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. S1983; Livadas v. Bradshaw, 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994).
The Constitution guarantees each person that he or she will not be deprived of life, liberty or property without due process of law. The "liberty" interests protected by the due process clause includes the specific substantive rights contained in the first ten amendments (1st, 4th and 8th amendments, in particular). In addition, there are substantive components of the due process clause itself (explained below) the violation of which can be redressed through a § 1983 suit. When enacted almost 126 years ago, § 1983 was the first of four sections comprising the Civil Rights Act of 1871.[5] It was reported as a bill "to enforce the provisions of the fourteenth amendment to the Constitution of the United States" and was popularly known as the "Ku Klux Klan Act." It was a response to the birth and spreading of violence in the South by activist groups following the Civil War. Section 1, now codified as § 1983, did no more than add civil remedies to the criminal penalties already established by the earlier 1866 Civil Rights Act.[6]
For ninety years the import of what is now § 1983 was largely nullified by an initial restrictive judicial interpretation of the Fourteenth Amendment itself, which focused upon the "privileges and immunities" of U.S. citizens, finding them to be almost non-existent, and also upon "state action" limitations.[7] Only later did the due process clause of the Amendment become the great protector of individual liberties, including those "read into" the clause from the Bill of Rights. In the seminal case of Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court reevaluated its prior restrictive interpretation of § 1983. In Monell, a female employee of both the Department of Social Services and the Board of Education of the City of New York sued under § 1983 alleging that the Department and Board had as a matter of official policy unconstitutionally compelled pregnant employees to take unpaid leaves of absence before such leaves were medically justifiable. Although constitutional injury was presumed, plaintiffs were denied relief in the lower courts based on Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).[8] On appeal, the Supreme Court looked to the same legislative history relied upon in Monroe and determined that the legislators who enacted the Ku Klux Klan Act 106 years before did intend that municipalities be considered "persons" under § 1983. Id. at 690, 98 S.Ct. at 2035-36. The Court, however, did not leave the § 1983 exposure of local governments unlimited. The Court announced that a city would not be liable under § 1983 for acts of its employees merely because it employed wrongdoers. There was to be no respondeat superior liability. Id. at 691, 98 S.Ct. at 2036. Although *617 generally unpopular with legal commentators and "merely advisory," this limitation on city liability under § 1983 has now become settled law.[9]
Section 1983 is not itself a font for substantive rights; instead it acts as an instrument for vindicating federal rights conferred elsewhere. Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). The first step in any § 1983 analysis is to pinpoint the specific constitutional right which was allegedly violated. Graham, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989); Kernats v. O'Sullivan, 35 F.3d 1171, 1175 (7th Cir.1994). The validity of the claim must then be judged by reference to the specific constitutional standard which governs that right. Graham, 490 U.S. at 394, 109 S.Ct. at 1870-71. As discussed, supra, in the present case the plaintiffs have potential claims based on the Fourth and Fourteenth Amendments. Thus they have met the first step required in a § 1983 analysis, however, in order to state a claim under § 1983 against a municipality or municipal officer, plaintiffs must further allege that the acts complained of were pursuant to an official policy, custom or practice. Monell, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611. This concept is discussed in detail below as the Court discusses § 1983 and its relevancy with regards to each defendant.

3. Implicated State Law
In addition to their Constitutional claims, plaintiffs also allege negligence, obstruction of justice, breach of a duty of care on behalf of Conner. Additionally, they allege personal mental and emotional pain and distress. These are purely state law claims. Because most of the claims are asserted against defendants in an official capacity, application of the Indiana Tort Claims Act is called into question.

Indiana Tort Claims Act
Indiana's Tort Claims Act provides that a "claim against a political subdivision is barred unless notice is file with the governing body of that political subdivision within 180 days after the loss occurs." IC §§ 34-4-16.5-1 to 34-4-16.5-19 (West 1983 and Supp.); Poole v. Clase, 476 N.E.2d 828 (Ind.1985), reh'g denied. The Indiana Supreme Court has held that the Act applies to all torts. However, pursuant to the United States Supreme Court holding in Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123 (1988), notice-of-claim statutes such as the Tort Claims Act are inapplicable to federal § 1983 actions. See also, Craig v. Witucki, 624 F.Supp. 558 (N.D.Ind.1986); Bienz v. Bloom, 674 N.E.2d 998 (Ind.Ct.App. 1996), reh'g denied; Kellogg v. City of Gary, 562 N.E.2d 685 (Ind.1990). This is because § 1983 was intended to provide a federal remedy, independently enforceable whether or not it duplicates a parallel state remedy. Craig, 624 F.Supp. 558, 559 (quoting Wilson v. Garcia, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985)). Accordingly, plaintiffs' § 1983 claims are not precluded by the Indiana Tort Claims Act. However, all of plaintiffs' pendant state law claims as to any defendants in their official capacity are precluded by the Act.

II. DEFENDANTS' MOTIONS
Having reviewed the applicable law and finding that plaintiffs' First, Fifth, and Eighth Amendment claims are inapplicable as to all defendants and that plaintiffs' state law claims against defendants in an official capacity are barred under the Tort Claims Act, the court now addresses plaintiffs' Fourth and Fourteenth Amendment claims as they pertain to the § 1983 allegations.

Defendant Jeanette Albert, Coroner
Defendant Albert is a county coroner. As a coroner, determining the cause of death is a state function. See Lawyer v. Kernodle, 721 F.2d 632 (8th Cir.1983) (private *618 physician hired by county to perform autopsies is state actor). Plaintiffs state claims against Albert only in her official capacity. In order to meet the burden required of stating a § 1983 claim against a municipality upon which relief can be granted, plaintiffs must show that (1) the harm was caused by a constitutional violation, and (2) the city is responsible for that violation. Collins v. City of Harker Heights, Texas, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992); Culver-Union Township Ambulance Serv. v. Steindler, 611 N.E.2d 698 (Ind.Ct. App.1993). In the present case, plaintiffs cannot meet this burden. Plaintiffs have claimed that defendants "deprived Conner of his civil rights." (Compl. at 7-9). A person's civil rights may only be violated while that person is alive. After death, one is no longer a "person" within our constitutional and statutory framework and has no rights of which he may be deprived. Love, 927 F.Supp. 1131, 1135-36; see also, Whitehurst v. Wright, 592 F.2d 834, 840 (5th Cir.1979); Estate of Cartwright v. City of Concord, 618 F.Supp. 722, 730 (N.D.Cal.1985), aff'd 856 F.2d 1437; Means v. City of Chicago, 535 F.Supp. 455 (N.D.Ill.1982). Any actions taken by Albert, in her official capacity occurred after Conner's death. Therefore, plaintiffs have failed to state a federal claim upon which relief can be granted.
As for plaintiffs' state law claims against Albert in her official capacity, plaintiffs' assertion that "it is well settled that notice of tort claim required under state law are not applicable to Section 1983 claims" is correct, however, notice is still required for the pendant state law claims. See Felder, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123. Felder does not hold that tort claim notice is unnecessary. Plaintiffs' misinterpret the law. Any state law claims as to Albert in her official capacity are barred. Accordingly, Albert's motion for summary judgment is granted and she is dismissed as a defendant in the present action.

Defendants Gerald Quinn, M.D., Pathologist and South Bend Medical Foundation, Inc.
Quinn was called in to perform the actual autopsy on Conner. Plaintiffs state claims against Quinn both individually and in his official capacity. Plaintiffs' claims are based on conspiracy and negligence. The civil rights statutes only impose liability for Constitutional deprivation, not for duties of care recognized by tort law. Baker v. McCollan, 443 U.S. 137, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). As with Albert, plaintiffs cannot meet the burden of establishing a Constitutional violation on the part of Quinn or SBMF. Plaintiffs' allegations against Quinn are state law claims. Similarly, plaintiffs' allegations against SBMF are solely founded in state law. A state tort does not become a constitutional violation simply because it is committed by a government actor. See generally, Collins, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261, Daniels v. Williams, 474 U.S. 327, 335, 106 S.Ct. 662, 667, 88 L.Ed.2d 662 (1986); Paul v. Davis, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), reh'g denied, 425 U.S. 985, 96 S.Ct. 2194, 48 L.Ed.2d 811. As state law tort claims, they are barred by the Indiana Tort Claims Act. Moreover, all actions taken by Quinn and related to SBMF occurred after Conner's death. At that time, Conner ceased to have any Constitutional rights that could have been violated. See e.g., Guyton v. Phillips, 606 F.2d 248 (9th Cir.1979), cert. denied, 445 U.S. 916, 100 S.Ct. 1276, 63 L.Ed.2d 600 (1980); Whitehurst, 592 F.2d 834, 840; Silkwood v. Kerr-McGee Corp., 637 F.2d 743 (10th Cir.1980), cert. denied, 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981); Culver-Union, 611 N.E.2d 698. It is clear that § 1983 does not provide a cause of action on behalf of a deceased based upon alleged violations of the deceased's civil rights which occurred after his death. See Love, 927 F.Supp. 1131, 1135-36.
Whether or not plaintiffs have a valid negligence claim as to Quinn in his individual capacity, or any proper state law claims against SBMF this Court has no jurisdiction over them as they are purely state law claims. Furthermore, as to any conspiracy claims, plaintiffs have failed to set forth all the elements of a prima facie case and therefore they fail as a matter of law. Accordingly, Quinn's motion for summary judgment is granted and he is dismissed as a defendant. Additionally, SBMF's motion for summary *619 judgment is granted and it is hereby dismissed from this action.

Defendants John Mortakis and the City of South Bend
These defendants filed a Motion to Dismiss pursuant to Rule 12(b)(6). The court may dismiss a complaint pursuant to a Rule 12(b)(6) motion "only if `it is clear beyond doubt that the non-movant can plead no facts that would support his claim for relief.'" Palda v. General Dynamics Corp., 47 F.3d 872 (7th Cir.1995), reh'g denied (quoting Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Courts will often convert a motion to dismiss to a motion for summary judgment. The court has complete discretion in determining whether a motion to dismiss should be converted into a motion for summary judgment. Sheldon v. Munford, Inc., 660 F.Supp. 130 (N.D.Ind.1987). The court considers whether proffered, extra-pleading material and actual conversion will likely facilitate disposition of action. Id. During the hearing and oral arguments on September 19, 1997, this court determined that the defendants' Motion to Dismiss would be considered as a Motion for Summary Judgment.
As discussed in depth, supra, plaintiffs fail to meet the burden of stating a claim upon which relief can be granted. Plaintiffs allege that Mortakis participated in a "cover-up" relating to the circumstances of Conner's death and that this is somehow a constitutional violation of rights. In order to allege a conspiracy to violate the civil rights of a person, plaintiffs must allege that there was an agreement made by the defendants while the decedent was still alive. Silkwood, 637 F.2d 743; Guyton, 606 F.2d 248; Whitehurst, 592 F.2d 834; Jemison v. DiLeonardi, No. 82 C 6964, 1983 WL 1751 (N.D.Ill. July 15, 1983); Means v. City of Chicago, 535 F.Supp. 455 (N.D.Ill.1982). The intimidation of witnesses and improper administration of polygraphs, even if proved, cannot be shown to have caused the deprivation of the decedent's life, liberty or property. See Jemison, 1983 WL 1751 at *2; Koch v. Schneider, 550 F.Supp. 846 (N.D.Ill.1982). An action on such a claim would be cognizable, if at all, in a state tort action.
Because no federal claim exists as to Mortakis, this court has no jurisdiction over any pendent state law claims. Therefore Mortakis' motion for summary judgment is granted and he is dismissed from this cause of action. Summary judgment is also granted as to the City of South Bend as the state law claims are barred by the Indiana Tort Claims Act.

Defendants Steven Ambrose, Frank Owens and the City of Elkhart
The defendants have filed a motion for partial summary judgment contending that the Indiana Tort Claims Act bars all claims against them, that there was no violation of Conner's civil rights prior to the shooting, and that the policies and customs of the City did not cause Conner's alleged civil rights violations. Furthermore, Owens contends that he cannot be held liable for the shooting of Conner or for failing to intervene.
First, defendants' contention that the Indiana Tort Claims Act bars all of plaintiffs' claims is incorrect. Notice of tort claim required under state law is not applicable to Section 1983 claims. Therefore, plaintiffs' § 1983 claims remain valid. However, notice is still required for the pendant state law claims, Felder, 487 U.S. 131, 108 S.Ct. 2302, 101 L.Ed.2d 123, and therefore, any such claims against the City are barred.
It is a well-settled principle that a § 1983 claim must be based upon the violation of plaintiff's personal rights, and not the rights of someone else. Dohaish v. Tooley, 670 F.2d 934, 936 (10th Cir.) cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) ("[T]he § 1983 civil rights action is a personal suit. It does not accrue to a relative, even the father of the deceased."); see also Coon v. Ledbetter, 780 F.2d 1158, 1160-61 (5th Cir.1986); Trujillo v. Board of County Commissioners, 768 F.2d 1186, 1187 (10th Cir.1985). Accordingly, any claims against defendants for violating Conner's rights and arising after Conner's death are dismissed, however, claims by Conner's parents for deprivation of their rights remain. Also, for acts occurring before the deceased's death, the cause of action survives under appropriate *620 state law. Robertson v. Wegmann, 436 U.S. 584, 98 S.Ct. 1991, 56 L.Ed.2d 554 (1978).
Defendants concede that an issue of fact remains as to whether or not Conner was armed at the time he was shot. (Brief at p. 2, n. 1). This issue is highly relevant in the present case. Defendants' argument that this shooting was "reasonable" is unpersuasive, especially if Conner was, in fact, unarmed. See generally, Graham, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (excessive force claims in context of arrest or stop or other "seizure" to be measured as Fourth Amendment violation under a "reasonableness" standard); see also Smith v. City of Fontana, 818 F.2d 1411 (9th Cir.1987), cert. denied, 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 269 (use of deadly force during detention of arrestee is substantive Fourth Amendment violation, not covered by Parratt); Lester v. City of Chicago, 830 F.2d 706, 712 (7th Cir.1987) (excessive force is considered Fourth Amendment violation regardless of officer's motives or extent of injury); Dugan v. Brooks, 818 F.2d 513 (6th Cir.1987) (arrest without probable cause and with excessive force is substantive Fourth Amendment violation); Wolf-Lillie v. Sonquist, 699 F.2d 864 (7th Cir.1983) (Fourth Amendment violation is substantive); Buchanan v. Sowa, 592 F.Supp. 1009 (N.D.Ohio 1984) (illegal arrest; substantive Fourth Amendment violation); Augustine v. Doe, 740 F.2d 322 (5th Cir.1984) (substantive violations of Fourth Amendment  illegal entry and unlawful arrest); Robins v. Harum, 773 F.2d 1004 (9th Cir.1985) (use of excessive force after arrest may be Fourth Amendment violation); Smith v. City of Fontana, 807 F.2d 796 (9th Cir.1987) (police kill unarmed suspect after he was in police custody; Fourth Amendment violation); Jamieson By and Through Jamieson v. Shaw, 772 F.2d 1205 (5th Cir. 1985), reh'g denied, 776 F.2d 1048 (complaint alleging that police improperly placed road block to stop speeding car and injured passenger states Fourth Amendment claim). Additionally, defendants' contention that Graham dictates any Constitutional violation must be analyzed only under the Fourth Amendment does not negate plaintiffs' claims. Even if the Court considers only the Fourth and not the Fourteenth Amendment summary judgment as to these defendants is not appropriate.
Furthermore, based on the record, this court is not convinced that defendants are protected by "qualified immunity." The alleged conduct in the present case does not meet the test of "objective, legal reasonableness." See, Hughes v. Meyer, 880 F.2d 967 (7th Cir.), cert. denied, 495 U.S. 931, 110 S.Ct. 2172, 109 L.Ed.2d 501 (1990). Moreover, as the Supreme Court held in Brandon v. Holt, 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), immunity is not available to a defendant in an "official-capacity" suit because it represents only another way of pleading against the entity of which the official is an agent. The entity, here the City, is not entitled to the shield of qualified immunity from liability under § 1983. Id., see also, Carey-Jones v. Duffin, No. 82 C 6285, 1985 WL 826 (N.D.Ill. April 16, 1985).
As for the City's contention that neither policy nor custom contributed to Conner's death, it is this Court's opinion that issues of fact remain and summary judgment is not appropriate. There is no question that Ambrose and Owens were acting in their capacity as police officers. Compare Gibson v. City of Chicago, 910 F.2d 1510 (7th Cir. 1990) (question as to whether officer's actions were related to the performance of police duty). There is no question that the officers were acting "under color of law."[10] In Monell, the Supreme Court recognized that "local governments, like every other § 1983 *621 `person,' by the very terms of the statute, may be sued for constitutional deprivations brought about under governmental `custom' even though such a custom has not received formal approval through the body's official decision making channels."[11]Id. at 690-91, 98 S.Ct. at 2036. The Court said that governmental custom, like official policy, can be established by a city's "lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Id. at 694, 98 S.Ct. at 2037-38; See, e.g., Wolf-Lillie, 699 F.2d 864. As in Carey-Jones, supra, the complaint here contains allegations that the City knew or should have known that the officers were in need of "supervision, discipline or treatment" and failed to take action. (Compl. at ¶ 26, 28, 29, 30); See, id. at *3. Further allegations contend that the City has a history of allowing use of excessive force. (Compl. at ¶ 27). To state a cause of action under § 1983 against a municipality, a plaintiff must allege what the policy is that is being challenged, and demonstrate that it may, under some set of facts be a proximate cause of his or her injury. Thus, in Koch v. Schneider, 550 F.Supp. 846 (N.D.Ill.1982), the court held that in a 42 U.S.C. § 1983 action against a municipality, a plaintiff must allege sufficient facts demonstrating that the municipal official's conduct was part of a pattern or activity amounting to a governmental custom or practice. The court stated that the differing approaches taken by various courts in determining the specificity of pleading required in a suit against a municipality under § 1983 reflected efforts to draw a principled line between the admittedly generous standards of federal notice pleading and the principle that a pleading is insufficient if it merely alleges the conclusions of the pleader without any factual support. The test, the court continued, is not whether the plaintiff has pleaded factual instances demonstrating that an unconstitutional policy exists, but rather whether the policy, custom, or practice, once pleaded, can be proved. Id. Pleading was found sufficient where an individual asserted that city police officers, acting without an arrest or search warrant, entered his home, searched it, beat him, and unlawfully arrested him, and further alleged that it was the practice and custom of the city, via its police officers, to treat black individuals in the manner and fashion described in the complaint. Spriggs v. Chicago, 523 F.Supp. 138 (N.D.Ill.1981). The man's claim that the officers were acting pursuant to a city custom was premised on the theory that instances of police brutality against black individuals occurred often and repeatedly, and that the city was aware of all or most of those events, yet failed to curb its employees' behavior, the court explained. Similarly, the pleadings were sufficient to get the claimants passed the summary judgment motions where one of the arrestees contended, and offered documentation to prove, that the officer involved in the incident had himself been involved in numerous incidents involving the use of excessive force, and that he had never been disciplined for his participation in those incidents. The other arrestee asserted that there was a pattern of constitutional violations in the district where the police officer defendants worked, and submitted documents in support of that assertion. Wilcher v. Curley, 519 F.Supp. 1 (D.C.Md.1980). In comparison, plaintiffs in the present case allege that Ambrose had a history of harassing Conner, that Ambrose was not disciplined for a previous use of excessive force, and that Elkhart inadequately supervised and trained its law enforcement *622 officers. It is this Court's opinion that plaintiffs' complaint satisfies the minimum standards for pleading liability.
Based upon the record and all of the circumstances surrounding the present case it is this Court's opinion that sufficient issues of fact remain regarding the liability of defendants Ambrose, Owens and the City of Elkhart.

CONCLUSION
It's apparent from the record that thus far in this case the plaintiffs have adopted the "scatter-gun" approach to litigation. Occasionally that tactic will breed success, but not very often. More often, it dissipates and misuses valuable resources by both its proponent and its opponent. That may well be the case here. Another disadvantage of such an approach is that it may waste valuable and finite judicial resources. Finally, and most importantly, it may put the proponent of the approach to a distinct disadvantage tactically. Sometimes the scatter-gun approach will obscure and de-emphasize essential issues that may have merit. It is perfectly conceivable that such is precisely the circumstance here. Now that this court has narrowed this case to what may be its essentials, it would be well for counsel on both sides to take a hard and realistic look at what each side has and what each side faces. In that regard, the services of a highly competent and experienced United States Magistrate Judge have been made available for the parties in this case.
For the preceding reasons, Defendant Albert's Motion for Summary Judgment is GRANTED. Albert is therefore dismissed from this case. Defendants Quinn and South Bend Medical Foundation's Motion for Summary Judgment is GRANTED. Both parties are dismissed from this case. Defendants Mortakis and the City of South Bend's Motion for Summary Judgment is GRANTED. Those parties are also dismissed from this case. This court is somewhat tempted to assess costs with respect to this dismissal against plaintiff. This court will not do so now, however, the court may revisit this issue when this case is finally decided. Defendants Ambrose's, Owens' and the City of Elkhart's Motion for Partial Summary Judgment is hereby DENIED.
IT IS SO ORDERED.
NOTES
[1] The following are taken from the record, presumed to be true and viewed in a light most favorable to the plaintiffs, pursuant to summary judgment standards.
[2] The 1986 Supreme Court trilogy was later reexamined in Eastman Kodak v. Image Technical Servs., 504 U.S. 451, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992), a case born in the context of antitrust law. The most that can be said for Eastman Kodak, however, is that it did not tinker with Celotex and Anderson, and possibly involves an attempt to clarify Matsushita. This view is well-supported by an in-depth academic analysis in Schwarzer, Hirsch, and Barrans, The Analysis and Decision of Summary Judgment Motions, 139 F.R.D. 441 (1992).
[3] For the judicial epilogue of Celotex, see Catrett v. Johns-Manville Sales Corp., 826 F.2d 33 (D.C.Cir.1987), cert. denied, 484 U.S. 1066, 108 S.Ct. 1028, 98 L.Ed.2d 992 (1988).
[4] Under Rule 56(e), the party opposing the motion may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party. (emphasis added). "If appropriate" means as a matter of the governing law. Glass v. Dachel, 2 F.3d 733 (7th Cir.1993); Egger v. Phillips, 710 F.2d 292 (7th Cir.1983) (en banc), cert. denied, 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262.
[5] Act of April 20, 1871, Ch. 22, 17 Stat. 13 (1871).
[6] Note, Developments in the Law  Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1153 (1977). For overviews of the legislative history of the Act, see id. at 1141-56; Note, Municipal Liability Under § 1983: The Meaning of "Policy or Custom," 79 Colum.L.Rev. 304, 307-09 (1979).
[7] The Slaughter-House Cases, 83 U.S. 36, 16 Wall. 36, 21 L.Ed. 394 (1872); United States v. Cruikshank, 92 U.S. 542, 551-52, 554, 2 Otto 542, 23 L.Ed. 588 (1875); The Civil Rights Cases, 109 U.S. 3, 3 S.Ct. 18, 27 L.Ed. 835 (1883); United States v. Harris, 106 U.S. 629, 638, 1 S.Ct. 601, 608-09, 27 L.Ed. 290 (1883); Barney v. City of New York, 193 U.S. 430, 438-39, 24 S.Ct. 502, 503-04, 48 L.Ed. 737 (1904); see generally, Williams, The Twilight of State Action, 41 Tex. L.Rev. 347 (1963).
[8] See also, Monell v. Department of Social Services, 532 F.2d 259, 262-63 (2d Cir.1976); Monell v. Department of Social Services, 394 F.Supp. 853, 855 (S.D.N.Y.1975).
[9] See, e.g., Polk County v. Dodson, 454 U.S. 312, 325, 102 S.Ct. 445, 453-54, 70 L.Ed.2d 509 (1981); Owen v. City of Independence, 445 U.S. 622, 655 n. 39, 100 S.Ct. 1398, 1417 n. 39, 63 L.Ed.2d 673 (1980), reh'g denied; Walters v. City of Ocean Springs, 626 F.2d 1317, 1323 (5th Cir. 1980); Dean v. Gladney, 621 F.2d 1331, 1335 n. 11, 1336-37 (5th Cir.1980), cert. denied, 450 U.S. 983, 101 S.Ct. 1521, 67 L.Ed.2d 819 (1981).
[10] In order to satisfy the test, both parts of the test must be met; "public function" or "nexus" or "joint action" test, as defined below, must be satisfied. The inquiry must be two-fold: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible;" (2) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." Lugar v. Edmondson Oil Co., 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982); see also, West v. Atkins, 487 U.S. 42, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); Butler v. Goldblatt Bros. 589 F.2d 323 (7th Cir.1978), cert. denied, Kowalski v. Butler, 444 U.S. 841, 100 S.Ct. 82, 62 L.Ed.2d 53 (1979). Both parts of the test are met in the present case.
[11] The Court interpreted § 1983 also to apply to municipalities where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," id. at 690, 98 S.Ct. at 2035-36, or has "received formal approval through the body's official decision making channels." Id. at 690-91, 98 S.Ct. at 2036. This official policy could be "made by [the local government's] lawmakers or by those whose edicts or acts may fairly be said to represent official policy." Further, such policy had to be the "moving force" behind the injury. Id. at 694-95, 98 S.Ct. at 2037-38.

Monell itself "unquestionably" involved such official policy, id. at 694-95, 98 S.Ct. at 2037-38, since the plaintiffs were challenging the "rules and regulations" of the defendant city agencies. See Monell v. Department of Social Services, 532 F.2d 259, 260 (2d Cir.1976); Monell v. Department of Social Services, 394 F.Supp. 853, 854 (S.D.N.Y.1975); See also, Polk County v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509.